# EXHIBIT "A"

# ADJUSTABLE RATE NOTE

**(LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

**JULY 31, 2003**            **HYDE PARK,**            **NY**

[City]                  [State]

**115 SOUTH QUAKER LANE
HYDE PARK, NY   12538**

[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $        **224,250.00**        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
**HOMEOWNERS LOAN CORP.,
A DELAWARE CORPORATION**

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of        **11.400**        %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the    **5TH**    of each month beginning on    **SEPTEMBER 5, 2003**    .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on
**AUGUST 5, 2033**                , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
**4501 CIRCLE 75 PARKWAY, SUITE A1225, ATLANTA, GA   30339**
or at a different place if required by the Note Holder.
**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $        **2,203.64**        . This amount may change.
**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**
The interest rate I will pay may change on    **AUGUST 5, 2005**                , and on that day every    **6th**    month thereafter. Each date on which my adjustable interest rate could change is called a "Change Date."
**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

Initials: _JK_

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TEN AND  15 / 100** percentage point(s) (  **10.150**  %) to the Current Index. The Note Holder will then round the result of this addition up to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than  **13.400**  % or less than  **11.400**  %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage point(s) (  **1.000**  %) from the rate of interest I have been paying for the preceding  **6**  months. My interest rate will never be greater than  **17.400**  %, nor less than  **11.400**  %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN**  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  **5.000**  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR 6 MONTH INDEX  (AS PUBLISHED IN THE WALL STREET JOURNAL)
FNMA3520 (06/94)

Initials: 

9.  **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.  **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.  **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

THIS LOAN IS MADE UNDER THE LAWS OF THE STATE OF   **NEW YORK**                              , EXCEPT TO THE EXTENT PREEMPTED BY THE DECLARATION THAT THIS LOAN IS AN ALTERNATIVE MORTGAGE TRANSACTION WITHIN THE MEANING OF THE ALTERNATIVE MORTGAGE TRANSACTION PARITY ACT OF 1982, 12 UNITED STATES CODE SECTION 3801 AND FOLLOWING, AS AMENDED, THE APPLICABLE FEDERAL REGULATIONS ADOPTED PURSUANT THERETO, AS AMENDED.

Important Notice to Borrower:   If you do not meet your contract obligations, you may lose your house.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JONATHAN A. KUHL                - Borrower

_____ (Seal)
                                - Borrower

_____ (Seal)
                                - Borrower

_____ (Seal)
                                - Borrower

*[Sign Original Only]*

# *ALLONGE*

Borrower(s):  JONATHAN A. KUHL

Property Address:  115 SOUTH QUAKER LANE
                   HYDE PARK, NY   12538

Loan Amount:    $224,250.00

Loan Date:      07/31/03

## PAY TO THE ORDER OF:

_____

### Without Recourse

Lender: HOMEOWNERS LOAN CORP., A DELAWARE CORPORATION

By: _____
    SHARON LEE
    ASSISTANT VICE PRESIDENT

*ORIGINAL*

HLALLON (8/99)

181945-1

## DUTCHESS COUNTY CLERK RECORDING PAGE

**RECORD & RETURN TO:**

HOMEOWNERS LOAN CORP
4501 CIRCLE 75 PKWY
STE D4100
ATLANTA            GA 30339

RECORDED: 01/07/2004

AT:          13:08:24

DOCUMENT #: 01 2004 363

RECEIVED FROM:    AES

MORTGAGOR: KUHL ANN L
MORTGAGEE: HOMEOWNERS LOAN CORP

RECORDED IN:    MORTGAGE                TAX
INSTRUMENT TYPE:                         DISTRICT: HYDE PARK

EXAMINED AND CHARGED AS FOLLOWS:

RECORDING CHARGE:              63.00          NUMBER OF PAGES:  12

MORTGAGE AMOUNT:          224,250.00

MORTGAGE TYPE:      1-2 FAMILY RESIDENCE

COUNTY TAX:                 1,121.00     ***   DO NOT DETACH THIS
MTA TAX:                      535.50     ***   PAGE
SPECIAL ADDL TAX:                        ***   THIS IS NOT A BILL
1-6 FAMILY TAX:               560.50

TOTAL TAX:                  2,217.00

SERIAL NUMBER:      CU020048

AFFIDAVIT:          N

COUNTY CLERK BY: RLP /_____
RECEIPT NO:    R01403
BATCH RECORD: A00295

*Colette M. Lafuente*

COLETTE M. LAFUENTE
County Clerk





PREMISES ARE/OR WILL BE IMPROVED BY
A ONE OR TWO FAMILY DWELLING ONLY



2218

WHEN RECORDED RETURN TO:
HOMEOWNERS LOAN CORP.
4501 CIRCLE 75 PARKWAY, STE D4100
ATLANTA, GA  30339

[Space Above This Line For Recording Data]

# MORGAGE

## MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**

(A) "Security Instrument." This document, which is dated          **JULY 31, 2003**          , will be called the "Security Instrument."

(B) "Borrower."
**ANN L. KUHL, A SINGLE WOMAN AND JONATHAN A. KUHL, A SINGLE MAN**



sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "Lender. " **HOMEOWNERS LOAN CORPORATION**
will be called "Lender." Lender is a corporation or association which exists under the laws of
**DELAWARE**
Lender's address is
**4501 CIRCLE 75 PARKWAY, SUITE D4100
ATLANTA, GA  30339**

(D) "Note." The note signed by Borrower and dated          **JULY 31, 2003**          , will be called the "Note." The Note shows that I owe Lender      **TWO HUNDRED TWENTY-FOUR THOUSAND TWO HUNDRED FIFTY AND 00/100**          Dollars (U.S. $      **224,250.00**  ) plus interest. I have promised to pay this debt in monthly payments and to pay the debt in full by **AUGUST 5, 2033** .

(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property. "

(F) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**
I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note;

(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument.

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
FNMA3033 (10/91)

Initials: J.K.
A K  HH

EXHIBIT A

ALL THAT CERTAIN PROPERTY SITUATED IN THE TOWN OF HYDE PARK IN THE
COUNTY OF DUTCHESS AND  STATE OF NEW YORK, BEING MORE FULLY
DESCRIBED IN A FEE SIMPLE DEED DATED 01/15/1992 AND RECORDED
04/15/1992, AMONG THE LAND RECORDS OF THE COUNTY AND STATE SET
FORTH ABOVE, IN LIBER 1910 PAGE 351.
TAX PARCEL IDS: 3200-6264-02-590558

**DESCRIPTION OF THE PROPERTY**
I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at   115  SOUTH QUAKER LANE
[Street]

**HYDE PARK**                              , New York        **12538**           . This Property is in
[City]                                                        [Zip Code]
**DUTCHESS**                                        County. It has the following legal description:
SEE ATTACHED EXHIBIT "A"

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements and appurtenances attached to the Property";

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;

(F) All of the rights and property described in subparagraphs (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subparagraphs (B) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**
I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.
I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**
This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
FNMA3033 (10/91)
Page 2 of 8

Initials:

<div align="center">COVENANTS</div>

I promise and I agree with Lender as follows:

**1. BORROWER'S PROMISE TO PAY**

I will pay to Lender on time principal and interest due under the Note and any prepayment and late charges due under the Note.

**2. MONTHLY PAYMENTS FOR TAXES AND INSURANCE**

**(A) Borrower's Obligations**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water frontage charges and other similar charges, sewer rents, leasehold payments or ground rents (if any), hazard or property insurance covering the Property, and flood insurance (if any). If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, (i) I also will pay to Lender all amounts necessary to pay for mortgage insurance, and (ii) if, under Paragraph 8 below, instead of paying for mortgage insurance I am required to pay Lender an amount equal to the cost of mortgage insurance, I will pay this amount to Lender. I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make these payments on the same day that my monthly payments of principal and interest are due under the Note.

My payments under this Paragraph 2 will be for the items listed in (i) through (vi) below, which are called "Escrow Items":

    (i) The estimated yearly taxes, assessments, water frontage charges and other similar charges, and sewer rents on the Property which under the law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien";

    (ii) The estimated yearly leasehold payments or ground rents on the Property (if any);

    (iii) The estimated yearly premium for hazard or property insurance covering the Property,

    (iv) The estimated yearly premium for flood insurance covering the Property (if any);

    (v) The estimated yearly premium for mortgage insurance (if any); and

    (vi) The estimated yearly amount I may be required to pay Lender under Paragraph 8 below instead of the payment of the estimated yearly premium for mortgage insurance (if any).

Lender will estimate from time to time the amount I will have to pay for Escrow Items by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless the law requires Lender to use another method for determining the amount I am to pay. The amounts that I pay to Lender for Escrow Items under this Paragraph 2 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

The law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender for a "federally related mortgage loan" could require me to place in an "escrow account" under the federal law called the "Real Estate Settlement Procedures Act of 1974," as that law may be amended from time to time. If there is another law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(B) Lender's Obligations**

Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with my loan, unless the law does not permit Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Security Instrument, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

**(C) Adjustments to the Funds**

Under the law, there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then the law requires Lender to account to me in a special manner for the excess amount of Funds. There will be an excess amount if, at any time, the amount of Funds which Lender is holding or keeping is greater than the amount of Funds Lender is allowed to hold under the law.

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items in full. Lender will determine the number of monthly payments I have in which to pay that additional amount, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender. If, under Paragraph 21 below, Lender either acquires or sells the Property, then before the acquisition or sale, Lender will use any Funds which Lender is holding at the time of the acquisition or sale to reduce the Sums Secured.

**3. APPLICATION OF BORROWER'S PAYMENTS**

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay any prepayment charges due under the Note;

Next, to pay the amounts due to Lender under Paragraph 2 above; Next, to pay interest due;

Next, to pay principal due; and

Last, to pay any late charges due under the Note.

Initials: J.K.
A.K.

## 4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments, water frontage charges and other similar charges, sewer rents, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

## 5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE

I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage, including floods and flooding. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain the insurance coverage described above, Lender may obtain insurance coverage to protect Lender's rights in the Property in accordance with Paragraph 7 below.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 21 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

## 6. BORROWER'S OBLIGATIONS TO OCCUPY THE PROPERTY, TO MAINTAIN AND PROTECT THE PROPERTY, AND TO FULFILL ANY LEASE OBLIGATIONS; BORROWER'S LOAN APPLICATION

**(A) Borrower's Obligations to Occupy the Property**

I will occupy the Property and use the Property as my principal residence within sixty days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**(B) Borrower's Obligations to Maintain and Protect the Property**

I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.

I will be "in default" under this Security Instrument if I fail to keep any promise or agreement made in this Security Instrument. I also will be in default under this Security Instrument if any civil or criminal action or proceeding for "forfeiture" (that is, a legal action or proceeding to require the Property, or any part of the Property, to be given up) is begun and Lender determines, in good faith, that this action or proceeding could result in a court ruling (i) that would require forfeiture of the Property or (ii) that would materially impair the lien of this Security Instrument or Lender's rights in the Property. I may correct the default by obtaining a court ruling that dismisses the legal action or proceeding, if Lender determines, in good faith, that this court ruling prevents forfeiture of my interests in the Property and also prevents any material impairment of (i) the lien created by this Security Instrument or (ii) Lender's rights in the Property. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Paragraph 18 below, even if Lender has required immediate payment in full.

Initials:

### (C) Borrower's Obligations to Fulfill Any Lease Obligations

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

### (D) Borrower's Loan Application

If, during the application process for the loan that I promise to pay under the Note, I made false or inaccurate statements to Lender about information important to Lender in determining my eligibility for the loan, Lender will treat my actions as a default under this Security Instrument. False or inaccurate statements about information important to Lender would include a misrepresentation of my intentions to occupy the Property as a principal residence. This is just one example of a false or inaccurate statement of important information. Also, if during the loan application process I failed to provide Lender with information important to Lender in determining my eligibility for the loan, Lender will treat this as a default under this Security Instrument.

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. MORTGAGE INSURANCE

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for the mortgage insurance. If, for any reason, the mortgage insurance coverage lapses or ceases to be in effect, I will pay the premiums for substantially equivalent mortgage insurance coverage. However, the cost of this mortgage insurance coverage must be substantially equivalent to the cost to me of the previous mortgage insurance coverage, and the alternate mortgage insurer must be approved by Lender.

If substantially equivalent mortgage insurance coverage is not available, Lender will establish a "loss reserve" as a substitute for the mortgage insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly mortgage insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the mortgage insurance would have covered. Lender may choose to no longer require loss reserve payments, if mortgage insurance coverage again becomes available and is obtained. The mortgage insurance coverage must be in the amount and for the period of time required by Lender. The Lender must approve the insurance company providing the coverage.

I will pay the mortgage insurance premiums, or the loss reserve payments, until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Paragraph 2 above.

## 9. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 10. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

## 11. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A) Borrower's Obligations

Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

Initials:

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

(B) **Lender's Rights**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 21 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

## 12. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument; and (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

## 13. LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

## 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in subparagraph (C) of the section above titled "Words Used Often In This Document. " A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

## 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT

This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

## 16. BORROWER'S COPY

I will be given one conformed copy of the Note and of this Security Instrument.

## 17. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

## 18. BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED

Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:

(A) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and

(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and

(C) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees; and

(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all of the conditions in this Paragraph 18, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraph 17 above.

**19. NOTE HOLDER'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE; BORROWER'S RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER**

The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales.

The entity that collects my monthly payments due under the Note and this Security Instrument is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note; there also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under Paragraph 14 above and under applicable law. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by the law.

**20. CONTINUATION OF BORROWER'S OBLIGATIONS TO MAINTAIN AND PROTECT THE PROPERTY**

The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws." I will not do anything affecting the Property that violates Environmental Laws and I will not allow anyone else to do so.

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 20. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 20 are called "Hazardous Substances."

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws, I will promptly notify the Lender in writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

**21. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS**

Except as provided in Paragraph 17 above, if all of the conditions stated in subparagraphs (A), (B) and (C) of this Paragraph 21 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full under this Paragraph 21 only if all of the following conditions are met:

(A) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured.

(B) Lender sends to me, in the manner described in Paragraph 14 above, a notice that states:
   (i) The promise or agreement that I failed to keep;
   (ii) The action that I must take to correct that default;
   (iii) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;
   (iv) That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;
   (v) That if I meet the conditions stated in Paragraph 18 above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and
   (vi) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have.

(C) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**22. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT**

When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

Initials: JK

A. K.

**23. AGREEMENTS ABOUT NEW YORK LIEN LAW**
    I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Paragraph 23.

**24. RIDERS TO THIS SECURITY INSTRUMENT**
If one or more riders are signed by Borrower and recorded together with this Security Instrument, the promises and agreements of each rider are incorporated as a part of this Security Instrument. [Check applicable box(es)]

[X] Adjustable Rate Rider     [ ] Condominium Rider     [ ] Planned Unit Development Rider

[ ] 1-4 Family Rider     [ ] Graduated Payment Rider     [ ] Biweekly Payment Rider

[ ] Balloon Rider     [ ] Rate Improvement Rider     [ ] Second Home Rider

[X] Other(s) [specify]     **LEGAL DESCRIPTION**

    BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 10 of this Security Instrument and in any rider(s) signed by me and recorded with it.

Witnesses:

_____     _____ (Seal)
                                       ANN L. KUHL             - Borrower

_____     _____ (Seal)
                                         JONATHAN A. KUHL       - Borrower

                                         _____ (Seal)
                                                           - Borrower

                                           _____ (Seal)
                                                             - Borrower

_____
                           [Space Below This Line For Acknowledgment]

STATE OF NEW YORK            )
            NY             ) SS:
COUNTY OF    *Dutchess*      )

    On the **31ST** day of **JULY**        in the year **2003**      before me, the undersigned, a notary public in and for said state, personally appeared
    **ANN L. KUHL AND JONATHAN A. KUHL**

~~personally known to~~ me or proved to me on the basis of satisfactory evidence to the the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

My Commission expires:   3-31-07

                         GERALD W POOL
                    Notary Public - State of New York
                       NO. 01PO6087735
                     Qualified in Ulster County
                   My Commission Expires 3-31-07

                                                     Notary Public

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

LOAN NO. ████████

# ADJUSTABLE RATE RIDER

### (LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **31ST** day of **JULY, 2003**,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to
**HOMEOWNERS LOAN CORP.,
A DELAWARE CORPORATION**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**115 SOUTH QUAKER LANE
HYDE PARK, NY 12538**
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **11.400** %. The Note provides for changes
in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on **AUGUST 5, 2005**, and on that day every
**6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average
of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as
published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the
month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
**TEN AND 15 / 100** percentage point(s)
( **10.150** %) to the Current Index. The Note Holder will then round the result of this addition up to
the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this
rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the
unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate
in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR 6 MO INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) - Single Family - FNMA Uniform Instrument
FNMA3138

Page 1 of 2



**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **13.400** % or less than **11.400** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage point(s) ( **1.000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **17.400** %, nor less than **11.400** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)          _____(Seal)
JONATHAN A. KUHL            - Borrower         ANN L. KUHL                - Borrower

_____(Seal)          _____(Seal)
                            - Borrower                                    - Borrower

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR 6 MO INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) - Single Family - FNMA Uniform Instrument
FNMA3138

Page 2 of 2

TRUE & CERTIFIED

EXHIBIT A

ALL THAT CERTAIN PROPERTY SITUATED IN THE TOWN OF HYDE PARK IN THE
COUNTY OF DUTCHESS AND  STATE OF NEW YORK, BEING MORE FULLY
DESCRIBED IN A FEE SIMPLE DEED DATED 01/15/1992 AND RECORDED
04/15/1992, AMONG THE LAND RECORDS OF THE COUNTY AND STATE SET
FORTH ABOVE, IN LIBER 1910 PAGE 351.
TAX PARCEL IDS: 3200-6264-02-590558

kuhl,ion



## DUTCHESS COUNTY CLERK RECORDING PAGE

RECORD & RETURN TO:

HOUSEHOLD MORTGAGE SERVS
577 LAMONT RD
PO BOX 1247
ELMHURST              IL 60126

RECORDED: 07/16/2004

AT:        12:33:56

DOCUMENT #: 01 2004 2254A

RECEIVED FROM:   HSBC BANK USA

ASSIGNOR:   HOMEOWNERS LOAN CORP
ASSIGNEE:   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS

RECORDED IN:      ASSIGN. OF MORTGAGE
ORIG MORTGAGOR:   KUHL ANN L

EXAMINED AND CHARGED AS FOLLOWS:

RECORDING CHARGE:              36.50          NUMBER OF PAGES:   3

04 / 363

*** DO NOT DETACH THIS
*** PAGE
*** THIS IS NOT A BILL

COUNTY CLERK BY: MOK /____
RECEIPT NO:   R61995
BATCH RECORD: A00155



COLETTE M. LAFUENTE
County Clerk

natul Doc #: 012004Z254A Printed Page 1 of 3

PREPARED BY:
**LIZ PECORARO**
877 LAMONT RD.
ELMHURST, IL 60126
630-617-7000

When Recorded, Mail and Return To:
Household Mortgage Services
577 Lamont Rd.
P.O. Box 1247
Elmhurst, IL 6012

## ASSIGNMENT OF MORTGAGE/SECURITY DEED
### By Corporation or Partnership

FOR VALUABLE CONSIDERATION,
HOMEOWNERS LOAN CORP.,
A DELAWARE CORPORATION                                                    under the laws of
DELAWARE 4501 Circle 75 Parkway,                , Assignor (whether one or more), hereby sells, assigns and transfers to
Suite D-100 Atlanta, GA 30339

                                   Mortgage Electronic Registration Systems, Inc.
                                   1595 Spring Hill Road, Suite 310, Vienna, VA 22182
one or more), the Assignor's interest in the Mortgage/Security Deed dated  JULY 31,  2003          , Assignee (whether executed by
ANN L. KUHL, A SINGLE WOMAN AND JONATHAN A. KUHL, A SINGLE MAN

as Mortgagor/Grantor, to
HOMEOWNERS LOAN CORP.
as Mortgagee/Beneficiary, and filed for record   Jan 7          2004  , as Document Number
01 2004 863    (or in Book ___  of ___  Page ___), in the Office of the
(County Recorder) (Registrar of Titles) of DUTCHESS         County,  NY
described hereinafter as follows:
SEE ATTACHED EXHIBIT "A"
Mortgage Amount: 224,250.00



MORE COMMONLY KNOWN AS;            This assignment is not subject to the requirements of
115 SOUTH QUAKER LANE              section 275 of the Real Property Law because it is an
HYDE PARK, NY  12538               assignment within the secondary mortgage market.

Corporate Assignment of Mortgage/Security Deed (MOB)                    Page 1 of 2

natal Doc #: 012004Z254A Printed Page 2 of 3

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Real Estate Mortgage/Security Deed.

(There is No Corporate Seal)

HOMEOWNERS LOAN CORP.

By:

SHARON LEE
Its: ASSISTANT VICE PRESIDENT

Witness

Witness

STATE OF GA }
COUNTY OF Cobb } ss.

On this 31 day of July 2003 , before me, a Notary Public
within and for said County, personally appeared

Sharon Lee

Personally known to me to be the duly authorized agent of the ASSIGNOR and personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that as such duly authorized agent of the ASSIGNOR, as a free and voluntary act, and as a free and voluntary act and assignment of said ASSIGNOR, for the uses and purposes therein set forth.

Kristin N Bell
Signature of Person Taking Acknowledgment

My Commission Expires: 01.21.05

OFFICIAL SEAL
Kristin N. Bell
Notary Public
Cobb Co. Georgia
My Comm. Expires Jan. 21, 2005

Corporate Assignment of Mortgage/Security Deed (2003)                    Page 2 of 2



## DUTCHESS COUNTY CLERK RECORDING PAGE

RECORD & RETURN TO:

```
HSBC MORTGAGE SERVS
577 LAMONT RD
ELMHURST           IL 60126
```

RECORDED: 09/06/2006

AT:        13:26:03

DOCUMENT #: 01 2006 1827A

RECEIVED FROM:   PRIME TITLE SEARCH LLC

ASSIGNOR:   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS
ASSIGNEE:   HOUSEHOLD FINANCE REALTY CORP OF NY

RECORDED IN:     ASSIGN. OF MORTGAGE
ORIG MORTGAGOR:  KUHL, ANN L

EXAMINED AND CHARGED AS FOLLOWS:

RECORDING CHARGE:              42.50          NUMBER OF PAGES:  5
                                              04      363

```
***   DO NOT DETACH THIS
***   PAGE
***   THIS IS NOT A BILL
```

COUNTY CLERK BY: MOK /_____
RECEIPT NO:    R63449
BATCH RECORD: D00326



COLETTE M. LAFUENTE
County Clerk

 

natal Doc #: 012006182?A Printed Page 1 of 5

Document Prepared By:
Michelle Wilson *Michelle Wilson*
When recorded return to:
HSBC Mortgage Services
577 Lamont Road
Elmhurst, IL 60126
Assignment Dept.
Project Account/Bank
Loan #: ▓▓▓▓▓

Pool #:
PIN/Tax ID #:
Property Address:
115 SOUTH QUAKER LANE
HYDE PARK, NY 12558

This space for Recorder's Use Only

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Mortgage Electronic Registration Systems, Inc., A Corporation, whose address is 1595 Spring Hill Road, Suite 310, Vienna, Va. 22182, does by these presents hereby grant, bargain, sell, assign, transfer, convey, set over and deliver unto Household Finance Realty Corporation of New York, A Corporation, whose address is 577 Lamont Road, Elmhurst, IL. 60129, the following described mortgage (the "Mortgage"), together with the certain promissory note(s) described therein (the "Note(s)"), together with all rights therein and thereto, all liens created or secured thereby, and any and all interest due or to become due thereon.

State of Recordation:   New York       Recording Jurisdiction: DUTCHESS
Recording Book:                Page:                   Document No:      01 2004 363
Recording Book2:                Page2:                  Document No2:
Recording Date: 01-07-2004      Recording Date2: _ _ _      Certificate No:
Original Mortgagor(s): ANN L. KUHL, A SINGLE WOMAN AND JONATHAN A. KUHL, A SINGLE MAN
Original Mortgagee: HOMEOWNERS LOAN CORPORATION

Date of Mortgage: 07-31-2003       Original Loan Amount: $224,250.00
Serial No:                          Serial No2:
District:             Section: 6264        Block:  02        Lot: 590558
Location: HYDE PARK, 119 South Quaker Lane

See attached for Previous Assignment History if Required
This assignment is not subject to Section 275 of the Real Property Law as it is an Assignment with the Secondary Mortgage Market.

IN WITNESS WHEREOF, the undersigned entity by its Board of Directors or by all due authority has caused this instrument to be executed by its duly authorized officer(s), representative(s) or Attorney-in-Fact this 08/23/2006 .

DATE OF TRANSFER:    8-18-2006

Mortgage Electronic Registration Systems, Inc.

Larry Pettrone
Vice President

State of IL
County of Cook
    On this date of 08/23/2006  before me, the undersigned  personally appeared Larry Pettrone, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual(s) made such appearance before the undersigned in the County/City/Parish of Cook, State of IL.

Notary Public, Josefina Garcia
My Commission Expires: 03-23-2010

OFFICIAL SEAL
JOSEFINA GARCIA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/23/10

*Said Mortgage was assigned to Mortgage Electronic Registration Systems, Inc by assignment recorded 1/16/2004 in Document # 01 2004 2254A

PRIME TITLE SEARCH, LLC.

████████████████████

**SCHEDULE A**
**DESCRIPTION**

Section 6264, Block 02 and Lot 599558

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Hyde Park, Dutchess County, New York, bounded and described as follows:

PARCEL 1

BEGINNING in the center of a stonewall 3 links Northerly of a hickory sapling and in the West bounds of J.G. Marshall's Land (now the Henry Kaelber Estate) and

RUNNING THENCE North 79 degrees 30 minutes West, 15 chains and 60 links to the intersection of 2 stonewalls;

THENCE North 17 degrees 30 minutes East, 2 chains to a stake driven in the ground on the edge of a swamp and near a stream of water;

THENCE North 69 degrees 45 minutes West, 1 chain and 24 links;

THENCE South 15 degrees 45 minutes West, 2 chains and 18 links to the center of the West abutment of a barway;

THENCE North 79 degrees 30 minutes West, 7 chains and 56 links to Thomas B. Kipp's lands (now Charles Osika);

THENCE along his (Osika's) line South 0 degrees 30 minutes West, 15 chains and 38 links to H.B. Marshall's (now Mark Wiley's) land;

THENCE in company with said Wiley's line South 81 degrees East, 1288.2 feet to a point at a corner of a stonewall (the Northwest corner of Parcel No. 2 hereinafter described);

THENCE continuing South 81 degrees East, 342 feet to a point and corner of a stonewall being the Southwest corner of Frank Massold's land (formerly J.G. Marshall);

THENCE due North 14 chains and 95 links along Massold's to the point or place of BEGINNING.

**ADVANTAGE TITLE AGENCY, INC.**



**SCHEDULE A**
**DESCRIPTION - CONTINUED**

PARCEL 2

BEGINNING at a point at the intersection of two stonewalls, said point being the Southeast corner of Parcel 1 hereinabove described, said point being also the Southwest corner of land of Frank Massold;

THENCE along the center of a stonewall South 81 degrees East, 385 feet to a point being the Northwest corner of other lands of Clayton Travis;

THENCE South 9 degrees West, 300.00 feet to a point being the Southeast corner of this parcel;

THENCE North 81 degrees West, 670 feet more or less to a point in the center of a stonewall, said wall bordering the line of Mark Wiley's property;

THENCE North along said Wiley North 0 degrees 30 minutes West, 303 feet more or less to a point in a stonewall on the Southerly line of Parcel No. 1 aforesaid;

THENCE Easterly along said wall South 81 degrees East, 342 feet to the point or place of BEGINNING.

ADVANTAGE TITLE AGENCY, INC.

**SCHEDULE A**
**DESCRIPTION - CONTINUED**

**PARCEL 3**

BEGINNING at a point, said point being the Southeast corner of Parcel 2 hereinabove described, and

RUNNING THENCE South 81 degrees East, 1000 feet more or less along the Southerly line of Clayton Travis lands to a point;

THENCE South 9 degrees West, 25.0 feet to a point;

THENCE South 81 degrees East, 550 feet more or less to a point on the Westerly line of South Quaker Lane;

THENCE Southerly, along the Westerly side of South Quaker Lane, 25.0 feet to a point;

THENCE North 81 degrees and parallel with course (c) 600 feet more or less along the lands of Clayton Travis to a point;

THENCE North 9 degrees East, 25 feet to a point;

THENCE in a Westerly direction North 81 degrees West parallel with course (a) 1000 feet to a point;

THENCE North 9 degrees East, 25 feet to the Southerly line of Parcel 2 hereinabove described;

THENCE along the Southerly line of said Parcel II South 81 degrees East, 25 feet more or less to the point or place of BEGINNING.

TOGETHER with an easement and right of way over the premises of the party of the first part to the North adjoining Parcel 3 hereinabove described, 25 feet along its entire length, through other lands of the parties of the first part and of premises now or formerly owned by Leonard Guido and Marietta Guido, his wife (Liber 1089 Page 448 of conveyances, recorded in the Dutchess County Clerk's Office and dated the 19th day of October, 1962) to Quaker Lane for the purpose of ingress and egress for pedestrian and vehicular traffic, and for no other use or purpose, to Parcel 1 and 2 hereinabove described.

EXCEPTING AND RESERVING an easement and right of way to and for the parties of the first part, their heirs and assigns forever, 25 feet wide in width, over and across the entire Parcel 3 hereinabove described, from South Quaker Lane to the Easterly side of the aforedescribed Parcel 2, for the purpose of ingress and egress for pedestrian and vehicular traffic, and the installation of utilities with the right (not the obligation ) to construct, repair and maintain a Road thereon.

Premises known as 115 South Quaker Lane, Hyde Park, New York



### Dutchess County Clerk Recording Page

Record & Return To :

TD SERV CO
4000 W METROPOLITAN DR STE 400
ORANGE, CA 92868

Date Recorded : 04/25/2014
Time Recorded : 12:40:00

Document # : 01 2014 1302A

Received From :   TD SERVICE CO

Mortgagor : HOUSEHOLD FINANCE REALTY CORP
OF NY

Mortgagee : LSF8 MASTER PARTICIPATION TRUST

Recorded In :     ASSIGNMENT of Mortgage
Original Mortgagor : KUHL ANN L

Examined and Charged As Follows :

Recording Charge :           $70.50

Number of Pages : 6

*** Do Not Detach This Page
*** This Is Not A Bill

04/363

County Clerk By :   cni /
Receipt # :         R22461
Batch Record :      B167





Bradford Kendall
County Clerk



natal Doc #: 0120141302A Printed Page 1 of 6

When Recorded Return to:
T.D. Service Company
4000 W. Metropolitan Dr., Suite 400
Orange, CA 92868

RECORDING REQUESTED BY AND WHEN RECORDED RETURN TO:

3965303DTI

Space Above This Line For Recorder's Use

| | |
|---|---|
| Prepared By: Brandi Coulter | Loan Number: |
| MERS Min: | Parcel ID: 133200-6264-02-590553-8000 |
| Caliber Document ID# | |

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, the undersigned HOUSEHOLD FINANCE REALTY CORPORATION OF NEW YORK whose address is 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134, hereby grants, assigns and transfers to LSF8 MASTER PARTICIPATION TRUST whose address is 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134 all beneficial interest under that certain Deed of Trust dated 7/31/2003 executed by ANN L KUHL, A SINGLE WOMAN and JONATHAN A KUHL, A SINGLE MAN to HOMEOWNERS LOAN CORPORATION in the amount of $224,250.00 and recorded on 1/7/2004 as Instrument # 01 2004 3K3, in Book/Volume or Liber No. – Page/Folio – of Official Records in the County Recorder's office of DUTCHESS County, NY, describing land herein as: 'SEE ATTACHED 'EXHIBIT A'

Property Address:   115 MELANIE WAY, HYDE PARK NY 12538

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated this 13th day of March of 2014

HOUSEHOLD FINANCE REALTY CORPORATION OF NEW YORK, BY CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT

Witness #1 _____ Nancy Ortiz

Witness #2 _____ Kerry Brashears

By: _____ Mindi Hernandez
Title:   Authorized Signatory

County of Oklahoma )
State of Oklahoma )

On March 13, 2014 before me, B. Coulter, a Notary Public in and for Oklahoma County, in the State of Oklahoma, personally appeared, Mindi Hernandez, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Name: _____ B. Coulter          My Commission Expires:     5/14/2016

This Assignment is not subject to the requirements of Section Two Hundred Seventy-Five of the Real Property Law because it is an assignment within the secondary mortgage market."

*B POA Recorded on 12/27/2013
see Inst # 02 707 7027
in Bk _____ Pg _____

B. COULTER
Notary Public
State of Oklahoma
Commission # 0200602   Expires 05/14/16

**EXHIBIT A**

PRIME TITLE SEARCH, LLC.



**SCHEDULE A**
**DESCRIPTION**

Section 6264, Block 02 and Lot 590558

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Hyde Park, Dutchess County, New York, bounded and described as follows:

PARCEL 1

BEGINNING in the center of a stonewall 3 links Northerly of a hickory sapling and in the West bounds of J.G. Marshall's Land (now the Henry Kaelber Estate) and

RUNNING THENCE North 79 degrees 30 minutes West, 15 chains and 60 links to the intersection of 2 stonewalls;

THENCE North 17 degrees 30 minutes East, 2 chains to a stake driven in the ground on the edge of a swamp and near a stream of water;

THENCE North 69 degrees 45 minutes West, 1 chain and 24 links;

THENCE South 15 degrees 45 minutes West, 2 chains and 18 links to the center of the West abutment of a barway;

THENCE North 79 degrees 30 minutes West, 7 chains and 56 links to Thomas B. Kipp's lands (now Charles Osika);

THENCE along his (Osika's) line South 0 degrees 30 minutes West, 15 chains and 38 links to H.B. Marshall's (now Mark Wiley's) land;

THENCE in company with said Wiley's line South 81 degrees East, 1282.2 feet to a point at a corner of a stonewall (the Northwest corner of Parcel No. 2 hereinafter described);

THENCE continuing South 81 degrees East, 342 feet to a point and corner of a stonewall being the Southwest corner of Frank Massold's land (formerly J.G. Marshall);

THENCE due North 14 chains and 95 links along Massold's to the point or place of BEGINNING.

ADVANTAGE TITLE AGENCY, INC.

**SCHEDULE A**
**DESCRIPTION - CONTINUED**

PARCEL 2

BEGINNING at a point at the intersection of two stonewalls, said point being the Southeast corner of Parcel 1 hereinabove described, said point being also the Southwest corner of land of Frank Massold;

THENCE along the center of a stonewall South 81 degrees East, 385 feet to a point being the Northwest corner of other lands of Clayton Travis;

THENCE South 9 degrees West, 300.00 feet to a point being the Southeast corner of this parcel;

THENCE North 81 degrees West, 670 feet more or less to a point in the center of a stonewall, said wall bordering the line of Mark Wiley's property;

THENCE North along said Wiley North 0 degrees 30 minutes West, 303 feet more or less to a point in a stonewall on the Southerly line of Parcel No. 1 aforesaid;

THENCE Easterly along said wall South 81 degrees East, 342 feet to the point or place of BEGINNING.


ADVANTAGE TITLE AGENCY, INC



**SCHEDULE A**
**DESCRIPTION - CONTINUED**

PARCEL 3

BEGINNING at a point, said point being the Southeast corner of Parcel 2 hereinabove described, and

RUNNING THENCE South 81 degrees East, 1000 feet more or less along the Southerly line of Clayton Travis lands to a point,

THENCE South 9 degrees West, 25 0 feet to a point,

THENCE South 81 degrees East, 550 feet more or less to a point on the Westerly line of South Quaker Lane,

THENCE Southerly, along the Westerly side of South Quaker Lane, 25 0 feet to a point,

THENCE North 81 degrees and parallel with course (c) 600 feet more or less along the lands of Clayton Travis to a point,

THENCE North 9 degrees East, 25 feet to a point,

THENCE in a Westerly direction North 81 degrees West parallel with course (a) 1000 feet to a point,

THENCE North 9 degrees East, 25 feet to the Southerly line of Parcel 2 hereinabove described,

THENCE along the Southerly line of said Parcel II South 81 degrees East, 25 feet more or less to the point or place of BEGINNING

TOGETHER with an easement and right of way over the premises of the party of the first part to the North adjoining Parcel 3 hereinabove described, 25 feet along its entire length, through other lands of the parties of the first part and of premises now or formerly owned by Leonard Guido and Marietta Guido, his wife (Liber 1089 Page 445 of conveyances, recorded in the Dutchess County Clerk's Office and dated the 19th day of October, 1962) to Quaker Lane for the purpose of ingress and egress for pedestrian and vehicular traffic, and for no other use or purpose, to Parcel 1 and 2 hereinabove described

EXCEPTING AND RESERVING an easement and right of way to and for the parties of the first part, their heirs and assigns forever, 25 feet wide in width, over and across the entire Parcel 3 hereinabove described, from South Quaker Lane to the Easterly side of the aforedescribed Parcel 2, for the purpose of ingress and egress for pedestrian and vehicular traffic, and the installation of utilities with the right (not the obligation ) to construct, repair and maintain a Road thereon

Premises known as 115 South Quaker Lane, Hyde Park, New York

EXHIBIT B

Mortgage recorded on 01/07/2004 Instrument # 01 2004 363 executed on 07/31/2003 for
borrower Ana L Kuhl, A Single Woman and Johathan A Kuhl, A Single Man and originated
with Homeowners Loan Corporation.

Assignment of Mortgage recorded on 07/16/2004 Instrument # 01 2004 2254A for Homeowners
Loan Corporation to Mortgage Electronic Registration Systems, Inc., (MERS).

Assignment of Mortgage recorded on 09/06/2006 Instrument # 01 2006 1827A executed on
08/18/2006 for Mortgage Electronic Registration Systems, Inc., (MERS) to Household Finance
Realty Corporation of New York.

Assignment of Mortgage executed on 03/13/2014 for Household Finance Realty Corp or NY to
LSF8 Master Participation Trust, to be recorded simultaneously herewith

natal Doc #: 0120141302A Printed Page 8 of 8



## Dutchess County Clerk Recording Page

Record & Return To:

FIRST AMERICAN MORTGAGE SOLUTIONS
3 FIRST AMERICAN WAY

SANTA ANA, CA 92707

Date Recorded: 2/14/2019
Time Recorded: 10:22 AM

Document #: 01-2019-50267A

Received From: Simplifile

Assignor: LSF8 MASTER PARTICIPATION TRUST
Assignee: MTGLQ INVESTORS, L.P.

Recorded In: ASSIGNMENT OF MORTGAGE
Instrument Type: ASSN
Original Mortgagor: KUHL ANN L

### Examined and Charged As Follows :

Recording Charge:          $55.50

Number of Pages:    3

*** **Do Not Detach This Page**
*** **This is Not A Bill**

County Clerk By:    SYS
Receipt #:           4665
Batch Record:       32





Bradford Kendall
County Clerk

Recording Requested and Prepared By:
FIRST AMERICAN MORTGAGE SOLUTIONS
13801 Wireless Way
Oklahoma City, OK 73134
AMBER HARRIS

And When Recorded Mail To:
COLLATERAL DEPARTMENT
MERIDIAN ASSET SERVICES, INC.
3201 34TH STREET SOUTH, SUITE 310
ST. PETERSBURG, FL 33711

——————————————— Space above for Recorder's use ———————————————

Customer#: 1/1

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, LSF8 MASTER PARTICIPATION TRUST, 13801 WIRELESS WAY,
OKLAHOMA CITY, OK 73134-0000, hereby assign and transfer to MTGLQ INVESTORS, L.P., 6011
CONNECTION DRIVE, IRVING, TX 75039-0000, all its right, title and interest in and to said Mortgage in
the amount of $224,250.00, recorded in the State of NEW YORK, County of DUTCHESS Official Records,
dated JULY 31, 2003 and recorded on JANUARY 07, 2004, as Instrument No. 01 2004 363, in LIBER:
N/A, at Page No. N/A.
Executed by: ANN L KUHL, A SINGLE WOMAN AND JONATHAN A KUHL, A SINGLE MAN
(Original Mortgagor).
Original Mortgagee: HOMEOWNERS LOAN CORPORATION.
Property Address: 115 MELANIE WAY, HYDE PARK, NY 12538-0000.
Assignments: "See attached Assignment Chain exhibit."

The assignee is not acting as a nominee of the mortgagor and that the mortgage continues to secure a bonafide
obligation.

Date: APRIL 06, 2018
LSF8 MASTER PARTICIPATION TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A., THROUGH
CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT FOR THE TRUSTEE
Power of Attorney Recorded on 09/11/13 As Instrument # 0220134710 In Book No. N/A At Page No. N/A In
the county of DUTCHESS.

By: _____
     Mindi Coleman, Authorized Signatory

This Assignment is not subject to the requirements of new section 275 of the real property law because it is an
assignment with the secondary mortgage market.

Page 2

State of    <u>OKLAHOMA</u>            }
County of   <u>OKLAHOMA</u>            } ss.

On APRIL 06, 2018 , before me, Amber S. Harris, a Notary Public, personally appeared **Mindi Coleman** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of OKlahoma city , County of <u>OKLAHOMA</u> State of <u>OKLAHOMA</u> .
Witness my hand and official seal.

(Notary Name): Amber S. Harris
My commission expires: 01/06/2021

**LSF8 MASTER PARTICIPATION TRUST** and office located at **13801 WIRELESS WAY,
OKLAHOMA CITY, OK  73134-0000**

Prepare By:  AMBER HARRIS



## Dutchess County Clerk Recording Page

Record & Return To:

FIRST AMERICAN MORTGAGE SOLUTIONS
3 FIRST AMERICAN WAY

SANTA ANA, CA 92707

| | |
|---|---|
| Date Recorded: | 2/14/2019 |
| Time Recorded: | 10:22 AM |
| Document #: | 01-2019-50268A |

Received From: Simplifile

Assignor: MTGLQ INVESTORS, L.P.
Assignee: U.S. BANK TRUST NATIONAL ASSOCIATION

Recorded In:        ASSIGNMENT OF MORTGAGE
Instrument Type:    ASSN
Original Mortgagor: KUHL ANN L

### Examined and Charged As Follows :

Recording Charge:        $50.50

Number of Pages:    2

**\*\*\* Do Not Detach This Page**
**\*\*\* This is Not A Bill**

County Clerk By:   SYS
Receipt #:         4665
Batch Record:      32



Bradford Kendall
County Clerk





**NEW YORK**
COUNTY OF DUTCHESS
LOAN NO: ███████████



When Recorded Mail To: Attn: Assignment Dept., Rushmore Loan Management Services Llc  C/O First American Mortg
Solutions, Llc. 1795 International Way, Idaho Falls, ID 83402. Ph. (208) 528-9895

Section: 6264   Block: 02   Lot: 590558

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, MTGLQ INVESTORS, L. P., located at 2001 ROSS AVENUE SUITE 2800, DALLAS, TX 752
ASSIGNOR, without recourse does hereby assign and transfer unto U.S. BANK TRUST NATIONAL ASSOCIATION, N
IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR LEGACY MORTGAGE ASSET TRU
2018-GS1, located at 60 LIVINGSTON AVENUE EP-MN-WS3D, ST. PAUL, MN 55107, ASSIGNEE, its successors
assigns, all of Assignor's right, title, and interest in and to that certain Mortgage dated JULY 31, 2003, made by ANN L. KUI
A SINGLE WOMAN AND JONATHAN A. KUHL, A SINGLE MAN, Mortgagor, to HOMEOWNERS LO
CORPORATION, Original Mortgagee, in the principal sum of $224,250.00 and recorded on JANUARY 07, 2004 as Docum
No. 01 2004 363 in the office of the County Clerk/Register for DUTCHESS County, State of NEW YORK and more particul
described hereinafter as follows:

LEGAL DESCRIPTION: AS DESCRIBED ON SAID MORTGAGE REFERRED TO HEREIN

PROPERTY ADDRESS: 115 SOUTH QUAKER LANE, HYDE PARK, NY 12538

ASSIGNMENT HISTORY:

An Assignment in whole dated JULY 31, 2003 and recorded from HOMEOWNERS LOAN CORPORATION
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. recorded on JULY 16, 2004 as Doc No. 01 2004 2254A

And an Assignment in whole dated AUGUST 18, 2006 and from MORTGAGE ELECTRONIC REGISTRATIO
SYSTEMS, INC. to HOUSEHOLD FINANCE REALTY CORPORATION OF NEW YORK recorded on SEPTEMBER
2006 as Doc No. 01 2006 1827A.

And an Assignment in whole dated MARCH 13, 2014 and from HOUSEHOLD FINANCE REALTY CORPORATION
NEW YORK to LSF8 MASTER PARTICIPATION TRUST recorded on APRIL 25, 2014 as Doc No. 01 2014 1302A.

TOGETHER WITH all rights accrued or to accrue under said Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successors, legal representatives and assigns, forever. The w
"assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument
requires. This assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignm
within the secondary mortgage market.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on   **JAN 3 1 2019**
MTGLQ INVESTORS, L.P.

ANDREA RHINEHARDT, VICE PRESIDENT

STATE OF TEXAS                          COUNTY OF DALLAS  ) ss.
On the  **JAN 3 1 2019**  day of _____  in the year _____ before me, t
undersigned, personally appeared ANDREA RHINEHARDT personally known to me to be the individual whose name
subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that I
his/her signature on the instrument, the individual, or person upon behalf of which the individual acted, executed the instrument

Natalie Flowers      (COMMISSION EXP.

**NOV 2 9 2022**
NOTARY PUBLIC



Natalie Flowers
My Commission Expires
11/29/2022
ID No 124227602

Page 1 of 1



2018 00096949
Bk: 50537 Pg: 213 Page: 1 of 5
Recorded: 11/19/2018 03:36 PM
ATTEST: John R. Buckley, Jr. Register
Plymouth County Registry of Deeds

Document drafted by and
RECORDING REQUESTED BY:
Rushmore Loan Management Services LLC
15480 Laguna Canyon Road
Irvine, CA  92618
Attn:  Tamara Sulea

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### LIMITED POWER OF ATTORNEY

**The trusts identified on the attached Schedule A (the "Trusts"),** by and through
**U.S. Bank Trust National Association,** a national banking association organized and existing
under the laws of the United States and having an office at 60 Livingston Avenue, EP-MN-WS3D,
St. Paul, MN  55107, not in its individual capacity but solely as Owner Trustee ("Trustee"),
hereby constitutes and appoints Rushmore Loan Management Services LLC ("Servicer"), and in
its name, aforesaid Attorney-In-Fact, by and through any officer appointed by the Board of
Directors of Servicer, to execute and acknowledge in writing or by facsimile stamp all documents
customarily and reasonably necessary and appropriate for the tasks described in the items (1)
through (12) below; provided however, that (a) the documents described below may only be
executed and delivered by such Attorneys-In-Fact if such documents are required or permitted
under the terms of the related servicing agreements, (b) all actions taken by Servicer pursuant to
this Limited Power of Attorney must be in accordance with Federal, State and local laws and
procedures, as applicable and (c) no power is granted hereunder to take any action that would be
either adverse to the interests of or be in the name of U.S. Bank National Association in its
individual capacity.  This Limited Power of Attorney is being issued in connection with Servicer's
responsibilities to service certain mortgage loans (the "Loans") held by the Trustee.  These Loans
are secured by collateral comprised of mortgages, deeds of trust, deeds to secure debt and other
forms of security instruments (collectively the "Security Instruments") encumbering any and all
real and personal property delineated therein (the "Property") and the Notes secured thereby.
Please refer to **Schedule A** attached hereto.

1.  Demand, sue for, recover, collect and receive each and every sum of money, debt, account
    and interest (which now is, or hereafter shall become due and payable) belonging to or
    claimed by the Trustee, and to use or take any lawful means for recovery by legal process or
    otherwise, including but not limited to the substitution of trustee serving under a Deed of
    Trust, the preparation and issuance of statements of breach, notices of default, and/or notices
    of sale, accepting deeds in lieu of foreclosure, evicting (to the extent allowed by federal, state
    or local laws), foreclosing on the properties under the Security Instruments by judicial or non-
    judicial foreclosure, instituting actions for temporary restraining orders, quiet title,
    injunctions, appointments of receiver, waste, fraud and any and all other legal actions, in tort,
    contract or otherwise, necessary to enforce the terms of the Security Instrument and to
    execute such verifications in support thereof, as may be necessary or advisable in any state
    or federal suit, bankruptcy action, administrative hearing or other proceeding.

2.  Execute and/or file such documents and take such other action as is proper and necessary to defend the Trustee in litigation and to resolve any litigation where the Servicer has an obligation to defend the Trustee, including but not limited to dismissal, termination, cancellation, rescission and settlement.

3.  Transact business of any kind regarding the Loans, as the Trustee's act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto.

4.  Execute, complete, indorse or file bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the borrowers and/or the Property, including but not limited to the execution of estoppel certificates, financing statements, continuation statements, releases, satisfactions, reconveyances, assignments, loan modification agreements, payment plans, waivers, consents, amendments, forbearance agreements, loan assumption agreements, subordination agreements, property adjustment agreements, management agreements, listing agreements, purchase and sale agreements, short sale transactions and other instruments pertaining to mortgages or deeds of trust, and execution of deeds and associated instruments, if any, conveying the Property, in the interest of the Trustee.

5.  Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

6.  Execute any document or perform any act in connection with the administration of any PMI policy or LPMI policy, hazard or other insurance claim relative to the Loans or related Property.

7.  Execute any document or perform any act described in items (3), (4), and (5) in connection with the termination of any Trust as necessary to transfer ownership of the affected Loans to the entity (or its designee or assignee) possessing the right to obtain ownership of the Loans.

8.  Subordinate the lien of a mortgage, deed of trust, or deed or other security instrument to secure debt (i) for the purpose of refinancing Loans, where applicable, or (ii) to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain, including but not limited to the execution of partial satisfactions and releases and partial reconveyances reasonably required for such purpose, and the execution or requests to the trustees to accomplish the same.

9.  Convey the Property to the mortgage insurer, or close the title to the Property to be acquired as real estate owned, or convey title to real estate owned property ("REO Property").

10. Execute and deliver any documentation with respect to the sale, maintenance, preservation, renovation, repair, demolition or other disposition, of REO Property acquired through a foreclosure or deed-in-lieu of foreclosure, including, without limitation: permits, remediation plans or agreements, certifications, compliance certificates, health and safety certifications, listing agreements; purchase and sale agreements; grant / limited or special warranty / quit claim deeds or any other deed, but not general warranty deeds, causing the transfer of title of

the property to a party contracted to purchase same; escrow instructions; and any and all documents necessary to effect the transfer of REO Property.

11. Servicer has the power to execute additional limited powers of attorney and delegate the authority given to it by U.S. Bank National Association, as Trustee, under the applicable servicing agreements for the Trusts listed on Schedule A, attached.

12. To execute, record, file and/or deliver any and all documents of any kind for the purpose of fulfilling any servicing duties, including but not limited to those listed in subparagraphs (1) through (11), above, where Trustee's interest is designated, stated, characterized as or includes any reference to one or more of the following: "Indenture Trustee", "Owner Trustee", "Successor Trustee", "Successor in Interest", "Successor to" "Successor by Merger", "Trustee/Custodian", "Custodian/Trustee" or other similar designation.

Trustee also grants unto Servicer the full power and authority to correct ambiguities and errors in documents necessary to effect or undertake any of the items or powers set forth in items (1) to (12), above.

In addition to the indemnification provisions set forth in the applicable servicing agreements for the Trusts listed on Schedule A, attached, Servicer hereby agrees to indemnify and hold the Trustee, and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of the misuse of this Limited Power of Attorney by the Servicer. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the related servicing agreements or the earlier resignation or removal of the Trustee for the Trusts listed on Schedule A.

**Witness** my hand and seal this 16th day of October, 2018.

NO CORPORATE SEAL

On Behalf of the Trusts, by
U.S. Bank Trust National Association,
  as Trustee

_____
Witness: Ellen Melges

By: _____
Brian Giel, Vice President

_____
Witness: Angela Lee

By: _____
Jesse J. Barkdull, Assistant Vice President

_____
Attest: Jennie L. Kunde, Trust Officer

CORPORATE ACKNOWLEDGMENT

State of Minnesota

County of Ramsey

On this 16th day of October, 2018, before me, the undersigned, a Notary Public in and for said County and State, personally appeared Brian Giel, Jesse J. Barkdull and Jennie L. Kunde, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within instrument as Vice President, Assistant Vice President, and Trust Officer , respectively of U.S. Bank Trust National Association, a national banking association, and acknowledged to me that such national banking association executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

Signature: _____
           Ashley Nichol Johnson

My commission expires: 1/31/2023

ASHLEY NICHOL JOHNSON
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2023

## SCHEDULE A

Legacy Mortgage Asset Trust 2018-RPL1

U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for Legacy Mortgage Asset Trust 2018-RPL1

Legacy Mortgage Asset Trust 2018-RPL3

U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for Legacy Mortgage Asset Trust 2018-RPL3

Legacy Mortgage Asset Trust 2018-RPL4

U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for Legacy Mortgage Asset Trust 2018-RPL4

Legacy Mortgage Asset Trust 2018-RPL5

U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for Legacy Mortgage Asset Trust 2018-RPL5

Legacy Mortgage Asset Trust 2018-GS1

U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for Legacy Mortgage Asset Trust 2018-GS1

Legacy Mortgage Asset Trust 2018-GS2

U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for Legacy Mortgage Asset Trust 2018-GS2

Legacy Mortgage Asset Trust 2018-GS3

U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for Legacy Mortgage Asset Trust 2018-GS3

The foregoing is a true copy from the
Plymouth County Registry of Deeds.
Book    50537        Page  2/3
Attest: John R. Buckley Jr.
              Register