UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JONATHAN KUHL,                                         :
                Plaintiff,                               :
                                                                :
v.                                                                    :
                                                                :
U.S. BANK TRUST NATIONAL                       :   **OPINION AND ORDER**
ASSOCIATION, not in its individual capacity  :
but solely as owner trustee for Legacy Mortgage :   19 CV 8403 (VB)
Asset Trust 2018GS-1; MTGLQ INVESTORS, :
LP; and RUSHMORE LOAN MANAGEMENT   :
SERVICES LLC,                                           :
                Defendants.                           :
--------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Jonathan Kuhl, proceeding pro se, brings this action against U.S. Bank Trust National Association ("U.S. Bank"), not in its individual capacity but solely as owner trustee for legacy Mortgage Asset Trust 2018GS-1 ("Mortgage Asset Trust"); MTGLQ Investors, LP ("MTGLQ"); and Rushmore Loan Management Services LLC ("Rushmore"). Plaintiff brings claims for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., against U.S. Bank and MTGLQ, and brings state law claims against Rushmore.

       Now pending are MTGLQ's motion to dismiss pursuant to Rule 12(b)(6) (Doc. #12), and U.S. Bank's and Rushmore's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) (Doc. #17).

       For the reasons set forth below, MTGLQ's motion is GRANTED, and U.S. Bank and Rushmore's motion is DENIED.

       The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.

1

**BACKGROUND**

For the purpose of ruling on the motions to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.  Mortgage Assignments

Plaintiff alleges that in 2014, he mortgaged his property, 115 Melanie Way, Hyde Park, New York, for $229,853,[1] and that on March 13, 2014, the mortgage was assigned to LSF8 Master Participation Trust ("LSF8"). Plaintiff further alleges that on April 6, 2018, LSF8 assigned the mortgage to MTGLQ, which LSF8 belatedly recorded with the Dutchess County Clerk on February 14, 2019. Plaintiff also alleges that on February 14, 2019, MTGLQ assigned the mortgage to U.S. Bank as owner trustee for Mortgage Asset Trust. According to plaintiff, he did not receive notice of the mortgage assignment to MTGLQ, or the subsequent assignment to U.S. Bank, within thirty days of each assignment.

II. Insurance Proceeds

Plaintiff alleges that in February 2019, a garage-workshop on his property burned down, and he was injured. As a result, his income was "impaired" for six months. (Compl. ¶ 3).

---

[1] Plaintiff alleges this action concerns real property located at 11 Melanie Way, Hyde Park, N.Y. (Doc. #2 ("Compl.") ¶ 1). However, MTGLQ has provided a document suggesting the correct address as 115 Melanie Way, Hyde Park, N.Y. (See Doc. #12-1). In addition, plaintiff submits a document indicating the address of the property is 115 South Quaker Lane, Hyde Park, N.Y. (Doc. #30 at ECF 8). The Court takes judicial notice that Google Maps indicates 115 Melanie Way, Hyde Park, N.Y., and 115 South Quaker Lane, Hyde Park, N.Y. are located at the same location, and the Court concludes the property at issue is 115 Melanie Way, Hyde Park, N.Y.

According to plaintiff, on April 12, 2019, Great American Insurance Group ("GAIG"), plaintiff's property insurer, approved a claim relating to the fire and sent $151,877 to plaintiff's mortgage loan servicer, Rushmore.

Plaintiff claims that by letter dated April 22, 2019, Rushmore informed plaintiff it was releasing to him one-third of the insurance proceeds ($50,625) to begin repairs. Plaintiff alleges Rushmore also stated it would send him an additional one-third of the proceeds after an inspector viewed the premises and reported the repairs were forty percent completed.

According to plaintiff, on July 9, 2019, a Rushmore agent inspected the premises and told plaintiff he would inform Rushmore that fifty percent of the work was completed.

Plaintiff claims, however, that as of the date he commenced this action, Rushmore had sent him only $25,000. According to plaintiff, because of this, he has been unable to use his garage-workshop to complete work projects, causing him to lose at least $50,000 in anticipated income.

## DISCUSSION

I.  Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2] First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.   Subject Matter Jurisdiction

Rushmore argues plaintiff has not plausibly alleged the amount in controversy required for diversity jurisdiction over plaintiff's state law claims.

The Court disagrees.

District courts have original jurisdiction over civil actions between citizens of different states when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

"A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional

4

amount" at the time the action was commenced.  Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Tr. Co. of Chi., 93 F.3d 1064, 1070 (2d Cir. 1996).  The Second Circuit recognizes a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  Pyskaty v. Wide World of Cars, LLC, 856 F.3d 216, 223 (2d Cir. 2017).  "A defendant may rebut that presumption by demonstrating to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums."  Id.

Here, plaintiff alleges that at the time he commenced the instant action, Rushmore had paid him only $25,000 of the $151,877 GAIG sent to Rushmore for the fire damage claim.  He further alleges he suffered a loss of $50,000 because, due to Rushmore's failure to disburse additional insurance funds, he was unable to make repairs to and utilize his garage-workshop to complete anticipated work projects. (Compl. ¶ 47).  In addition, plaintiff seeks an order directing Rushmore to pay him $75,000 in insurance funds, as well as additional damages in the amount of "$30,000 for lost business resulting from [Rushmore's] delay in paying the insurance proceeds to him."  (Id. at ECF 7).[3]

These allegations are sufficient for the Court to presume the amount in controversy exceeds $75,000.  Moreover, Rushmore has not rebutted that presumption by demonstrating to a legal certainty that the amount recoverable is equal to or less than $75,000, or that the damages alleged were feigned to satisfy the jurisdictional minimum.  Indeed, Rushmore's argument that the amount-in-controversy requirement is not met centers on its contention that having paid additional insurance proceeds to plaintiff since the commencement of this suit, Rushmore now

---

[3]   "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

holds only $74,438.33 in insurance proceeds. This argument fails as a matter of law because "[s]atisfaction of the § 1332(a) diversity requirements (amount in controversy and citizenship) is determined as of the date that suit is filed—the 'time-of-filing' rule." See Wolde–Meskel v. Vocational Instruction Project Cmty. Servs ., Inc., 166 F.3d 59, 62 (2d Cir. 1999).

Accordingly, the Court concludes it has subject matter jurisdiction over plaintiff's state law claims.

III.    Failure to State a Claim

Rushmore also argues plaintiff fails plausibly to state a claim for breach of fiduciary duty and for equitable relief.[4]

The Court disagrees.

A court assessing a Rule 12(b)(6) motion may "consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Courts also may consider documents deemed "integral" to the complaint, id., and any matters subject to judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

To incorporate a document by reference, a complaint "must make a clear, definite and substantial reference to the document[]." DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010). "Limited quotation of [a] document[] not attached to the complaint does not constitute incorporation by reference." Id.

---

[4] In plaintiff's opposition to the instant motion, he requests the Court "hold the third [breach of fiduciary duty] and fourth [equitable relief] cause[s] of action in abeyance pending" a state court foreclosure conference. (Doc. #25 ("Pl. Opp.") at ECF 2). The Court construes this as a request to stay the instant action. However, by letter dated July 31, 2020, plaintiff indicated such conference has occurred and that the parties have reached an agreement in principle with regard to the state court action. (See Doc. #32). Accordingly, the Court will not stay this action.

"To be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the document[] in framing the complaint." DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d at 60. Reliance is essential: the plaintiff's "mere notice or possession" of a document does not suffice. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

Here, Rushmore's argument that plaintiff fails to state a claim because Rushmore has distributed insurance proceeds in accordance with its "insurance process guidelines" depends on the Court's consideration of two letters and attached forms Rushmore purportedly sent to plaintiff. (Doc. #17 ("Fitzgerald Aff.")) Exs. E, G)). These documents are neither incorporated by reference in, nor integral to, the complaint.

Exhibit E, attached to the Fitzgerald affirmation submitted by Rushmore, comprises an April 12, 2019, letter from Rushmore to "Borrower"—who is not identified by name—and fourteen pages of "Process Guidelines" and form documents regarding disbursement of funds regarding property damage. Similarly, Exhibit G attached to the same affirmation, comprises an April 22, 2019, letter from Rushmore to "Borrower"—who is not identified by name—and thirteen pages of "Process Guidelines" and form documents regarding disbursement of funds regarding property damage. In his complaint, plaintiff makes no reference to an April 12, 2019, letter and attachments from Rushmore, and includes no allegations that indicate he relied upon such letter and attachments. And although plaintiff does reference an April 22, 2019, letter he received from Rushmore, plaintiff neither "makes a clear, definite and substantial reference to" that letter, nor otherwise indicates he "relied upon [it] in framing the complaint." DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d at 60.

7

Accordingly, the Court will not consider these documents at this stage of the proceedings, and Rushmore's arguments based on the documents do not sustain dismissal of plaintiff's state law claims.

Moreover, liberally construed, plaintiff's complaint raises plausible claims against Rushmore for breach of fiduciary duty and for breach of contract.

"The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." Varveris v. Zacharakos, 110 A.D.3d 1059, 1059 (2d Dep't 2013). "A fiduciary relationship exists between two persons when one of them is under a duty to act for the benefit of another upon matters within the scope of the relation." Id. "Generally, the relationship between a borrower and a bank is contractual in nature and does not create a fiduciary relationship between them." Baumann v. Hanover Cmty. Bank, 100 A.D.3d 814, 817 (2d Dep't 2012). Under certain circumstances, however, New York law recognizes a fiduciary relationship may exist in the context of an escrow account. See Hoover v. HSBC Mortg. Corp. (USA), 9 F. Supp. 3d 223, 253 (N.D.N.Y. 2014) (collecting cases).

Here, plaintiff alleges "when Rushmore placed $157,877 of the insurance proceeds in escrow, it became Mr. Kuhl's fiduciary and he its dependent." (Compl. ¶ 46). Plaintiff further alleges that although Rushmore told him it would pay him two-thirds of the insurance funds, Rushmore had paid him only $25,000. Moreover, plaintiff alleges he suffered monetary damages by not being able to perform work in his garage-workshop. At this early stage of the proceedings, these allegations plausibly state a breach of fiduciary duty claim against Rushmore.

In addition, although plaintiff does not delineate a breach of contract claim as a "cause of action" in his complaint, liberally construed, the complaint plausibly states such a claim. "Under

8

New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).  Here, plaintiff has plausibly alleged Rushmore and plaintiff had an agreement whereby Rushmore would disburse one-third of the insurance proceeds to begin repairs, and disburse an additional one-third after an inspector viewed the premises and reported the work was forty percent completed—for a total disbursement of $101,250.  Plaintiff also plausibly alleges adequate performance on his part.  Indeed, he alleges Rushmore's agent conducted an inspection of the premises and told plaintiff he would inform Rushmore that fifty percent of the work was completed.  Finally, plaintiff plausibly alleges Rushmore breached the parties' agreement by paying him only $25,000 of the first payment and not making the second payment upon completion of fifty percent of the repairs, and that he has been damaged by Rushmore's failure to disburse the insurance proceeds.

Accordingly, plaintiff's breach of fiduciary duty and breach of contract claims may proceed.

IV.   Truth in Lending Act

Defendants MTGLQ and U.S. Bank argue plaintiff fails plausibly to allege violations of the TILA with respect to these defendants' alleged failures to inform plaintiff of their mortgage assignments.

The Court disagrees as to U.S. Bank, but concludes such claim with respect to MTGLQ is time-barred.

The TILA provides, "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer," including the new

9

creditor's identity, address, and telephone number; the transfer date; how to reach an agent or party with authority to act on behalf of the new creditor; where the transfer of ownership is recorded; and any other relevant information regarding the new creditor. 15 U.S.C. § 1641(g)(1).

A claim under 15 U.S.C. § 1641(g)(1) must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Equitable tolling of the statute of limitations is available in "rare and exceptional circumstances" when a court finds that "extraordinary circumstances prevented the party from timely performing a required act, and that the party acted with reasonable diligence throughout the period he sought to toll." Gonzalez v. J.P. Morgan Chase Bank, N.A., 228 F. Supp. 3d 277, 291 (S.D.N.Y. 2017). Indeed,

> courts have held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations, because if the very nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified.

Id.

    A.    MTGLQ

Plaintiff alleges LSF8 assigned the mortgage to MTGLQ on April 6, 2018, and that he was not notified of the assignment within thirty days thereafter. Plaintiff commenced this suit on September 7, 2019, more than one year after the alleged violation. In addition, plaintiff has pleaded no facts, beyond the alleged TILA violation itself, raising an inference that MTGLQ wrongfully concealed information from plaintiff. Accordingly, equitable tolling is not warranted, and plaintiff's TILA claim against MTGLQ is time-barred.

B.    U.S. Bank

Plaintiff alleges MTGLQ assigned the mortgage to U.S. Bank as owner trustee for Mortgage Asset Trust on February 14, 2019, and that U.S. Bank did not notify plaintiff of the assignment within thirty days thereafter. Because this action was filed on September 10, 2019, plaintiff brought this claim within one year of the violation as alleged.

U.S. Bank argues that on or about June 11, 2018—which is, of course, prior to when plaintiff alleges the mortgage was assigned to U.S. Bank—it sent plaintiff a letter compliant with 15 U.S.C. § 1641(g)(1), which letter it appends to its reply brief. (Doc. #28-1). The Court will not consider this letter. It is not incorporated by reference in the complaint. Indeed, plaintiff alleges he never received notice of the assignment to U.S. Bank. Thus, it is difficult to see how plaintiff could have referenced in his complaint a letter he alleges does not exist. See DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d at 60 ("To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the document[]."). Moreover, this letter is not integral to the complaint. Id. ("To be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint."). Plaintiff may be mistaken about whether and when he received notice of the assignment. But accepting plaintiff's allegations as true, as the Court must at this stage of the case, this is not a dispute the Court can resolve on a motion to dismiss.

Accordingly, plaintiff's TILA claim against U.S. Bank will proceed.

**CONCLUSION**

MTGLQ's motion to dismiss is GRANTED.

U.S. Bank and Rushmore's motion to dismiss is DENIED.

By October 12, 2020, U.S. Bank and Rushmore shall file an answer to the complaint.

By separate order, the Court will schedule an initial conference.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motions. (Docs. ##12, 17).

The Clerk is further instructed to terminate from the docket defendant MTGLQ Investors, LP.

Dated: September 28, 2020
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge