U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NY (White Plains)
-----------------------------------------------------------------x
JONATHAN KUHL                                            :
                                                         : INDEX: 19-cv-8403
                                                         :
    Plaintiff                                            :
                                                         :
v.                                                       :
                                                         :
U.S. BANK TRUST NATIONAL                                 :
ASSOCIATION, NOT IN ITS INDIVIDUAL                       :
CAPACITY BUT SOLELY AS OWNER                             :
TRUSTEE FOR LEGACY MORTGAGE                              :
ASSET TRUST 2018GS-1, MTGLQ                              :
INVESTORS, LP and RUSHMORE LOAN                          :
MANAGEMENT SERVICES LLC                                  :
                                                         :
                                                         :
                                                         :
    Defendants                                           :
-----------------------------------------------------------------x

## ROSENDALE AFFIDAVIT IN SUPPORT
## OF PLAINTIFF'S CROSS-MOTION

DON ROSENDALE states as follows under penalty of perjury:

1. I am a retired corporate public affairs executive and work as a farmer and business consultant. Jonathan Kuhl hired me to assist him in the logistics of rebuilding his garage/workshop and I am personally familiar with the details of his dealing with Rushmore Loan Management and subsequently, the law firm of Knuckles, Monosinski and Manfro ("KKM") whom we were directed by Rushmore to communicate with.

1

2. On April 12, 2019 Mr. Kuhl received notice from the insurance company that it was approving payment of $154, 377 (Eventually this was reduced to $151,877 because there was $2,500 deductible.)

3. On going over the plans to build a new workshop, I realized that by reducing some of the frills (such as an elaborate bathroom complex) a new structure functionally as good as the old could be built for under $100,000 and suggested he might work out a plan with Rushmore to do so and apply the $54,000 left over to his supposedly arrears.

4. Mr. Kuhl and I had discussions on this plan with Rushmore's "single point of contact" and that was agreed upon. I remember re-drawing the proposed invoice for this to include more detail that he had provided.

5. According to my notes and records, this agreement was reached in April or early May of 2019.

5. The correspondence, notes and invoices were contained in a blue manila folder. Mr. Kuhl's recollection is that he gave this folder to me for safekeeping, but my memory is that he retained it. Neither of us can find that folder.

6. On September 25, 2020, I attended a conference before the Hon. Lisa Rubinstein in New York State Supreme Court to regarding the settlement Mr. Kuhl had reached with Rushmore in April of 2019. Rushmore was represented at that

conference by a Karen Olson. Although the KKM website now shows Ms. Olson as a lawyer in that firm, my impression at that conference was that she was an "appearance lawyer" hired for the day.

7. Ms. Olson sat immediately to my right. My recollection is that she had a sheaf of papers which might have been the April, 2019 correspondence with Rushmore in which it agreed with the plan to reduce the scale of the workshop and use the overage to bring Mr. Kuhl's mortgage current.

8. My clear understanding of that conference is that Ms. Olson confirmed that Rushmore had accepted the plan, and would use the approximately $54,000 in excess insurance payments to bring Kuhl's account current and use this as a down payment on a mortgage modification.

9. Referee Rubinstein designated me to act as a point of contact between the law firm and Kuhl. The next day I sent a "fax" to Ms. Olson on a business card she had given me providing my contact information. It is attached as Exhibit RA-1 and reads:

> "My e-mail and fax number are indicated at the top of this letter. As agreed upon by Mr. Kuhl yesterday, Rushmore is to release $51,000 of excess insurance proceeds to deal with any deficiencies."

10. I began receiving e-mails from an associate at the KKM law firm using the screen name "loss mitigation" later identified as Daniel Santoro. In response to his e-mails, I wrote to Mr. Santoro (Exhibit RA-2)

> "At the court-ordered settlement conference, the referee indicated that the court would sanction a settlement of the current foreclosure action by Mr. Kuhl agreeing to reduce the scale of his garage/shop reconstruction and using the excess insurance funds… to bring mortgage payments up to date…Subsequently to that I received an e-mail from Ms. Fitzgerald that your client was agreeable to that so as long as …Mr. Kuhl dropped his Federal lawsuit." (RA-2)

11. The symbols above that e-mail indicate that attached to it were "Kuhl2draft settlement" (Which recited the agreement confirmed with Ms. Olson in front of the referee); "Kuhlcostruction doc" (which was copy of the reduced construction plan sent to Rushmore in 2019); and "Kuhl.lien" which had something to do with a contractor's lien.

12. On May 9, 2020, Mr. Santoro responded:

> "The only item that I don't see addressed in the attachments is Mr. Kuhl's written request to apply remainder of the insurance funds ($54,439.33) to the arrears. Please forward send when you can." (RA-2) [The sum in parenthesis is in the e-mail]

13. On September 23, 2020, he e-mailed me:

> "Rushmore is prepared to release the remaining $54,439.33 restricted escrow to be applied to the arrears on the account…Please confirm that this is <u>still</u> the intent for these funds…" (Emphasis added). (RA-2).

14. The same day, in a subsequent e-mail, he wrote to me (RA-2):

4

"Rushmore just advised that they could offer the funds to the investor as a down payment towards a potential modification." (RA-2)

On October 1, 2020, he mailed me:

"… [T]he investor would like to make a trial modification offer, and is willing to bypass the application process, but is requiring an appraisal of the …in preparing the offer…" (RA-3) [The handwritten scrawls on this copy of the e-mail are those of Mr. Kuhl].

15. In a telephone conversation that day Mr. Santoro clarified that the offer to fast-track a loan modification reflecting its acceptance of the $54,000. He told me that there would not be anything else required other than the appraisal.

16. During my entire exchange with Mr. Santoro, there was never any indication by him that the first part of the bargain reached with Rushmore in April or May of 2019 and confirmed by Ms. Olson in the subsequent mandatory state settlement conference, that is, that Mr. Kuhl (with my supervision of the project) would build a less grand workshop, and the left-over insurance proceeds would bring his account current.

17. The only issue was whether the second part of the settlement, that the $54,000 excess would be applied as a down-payment on a loan modification. My understanding was that the excess payments could have and should have been applied to the Kuhl loan as soon as they were received from the insurance company in April of 2019.

18. My understanding at all times is that on receipt of the insurance proceeds, Rushmore would apply then to the mortgage payments and Mr. Kuhl would be "current" as of that date

19. I acted as intermediary until the new law firm took over, but after I forwarded a message from Mr. Kuhl to it, I received a snotty and condescending e-mail from Lance Colquitt of that firm telling me I was violating the Judiciary Law and practicing law without a license. I have not participated in any way since that date.

18. I swear under penalty of perjury pursuant to the U.S. Code are true.

Respectfully,

*Donald P. Rosendale* S/S/

Don Rosendale
4848 Route 44
Amenia, N.Y. 12501
(845) 373-9017

Dated: February 21, 2022