UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JONATHAN KUHL,
            Plaintiff,

v.

U.S. BANK TRUST NATIONAL
ASSOCIATION, not in its individual capacity
but solely as Owner Trustee for Legacy Mortgage
Asset Trust 2018GS-1, and RUSHMORE LOAN
MANAGEMENT SERVICES LLC,
            Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

19 CV 8403 (VB)

Briccetti, J.:

      Plaintiff, proceeding pro se, brings this action arising from defendants' distribution of insurance proceeds to plaintiff following fire damage to plaintiff's property. Plaintiff brings a claim under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g)(1), against U.S. Bank Trust National Association, as Owner Trustee for Legacy Mortgage Asset Trust 2018GS-1 ("U.S. Bank"), and state law claims for breach of fiduciary duty and breach of contract against Rushmore Loan Management Services LLC ("Rushmore").

      Now pending are the parties' cross-motions for summary judgment. (Docs. ##98, 99, 100, 104, 108).

      For the following reasons, plaintiff's motion is DENIED and defendants' motion is GRANTED.

      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

      The parties have submitted memoranda of law, declarations and affidavits with exhibits, and statements of undisputed material facts pursuant to Local Civil Rule 56.1, which together reflect the following factual background.

1

I. <u>Note and Mortgage</u>

On July 31, 2003, plaintiff executed an adjustable rate note (the "Note") for a loan in the amount of $224,250 secured by a mortgage (the "Mortgage") on his property at 115 South Quaker Lane, Hyde Park, New York.[1]

Appended to the Note is a single blank allonge endorsed by Homeowners Loan Corporation, the original lender under the Note and original mortgagee under the Mortgage. (Doc. #98-3 ("Loan Documents") at ECF 5).[2]

On June 11, 2018, Rushmore mailed plaintiff a notice that the "prior creditor . . . sold [plaintiff's] loan" to U.S. Bank on May 14, 2018, and Rushmore was the new loan servicer. (Doc. #98-4 ("Notice of Sale") at ECF 2–3).

On January 31, 2019, the Mortgage was assigned to U.S. Bank.[3]

Plaintiff defaulted on his mortgage payment due June 5, 2018, and on each monthly payment thereafter. On August 27, 2019, U.S. Bank commenced foreclosure proceedings in New York State Supreme Court, Dutchess County (the "Foreclosure Action"). (Doc. #98-5).

II. <u>Insurance Proceeds</u>

On January 27, 2019, after plaintiff stopped making mortgage payments but prior to commencement of the Foreclosure Action, a fire destroyed a detached garage on the mortgaged property that plaintiff had used as a workshop.

Section 5 of the Mortgage provides:

---

[1] The parties agree this address refers to the same property as 115 Melanie Way, Hyde Park, New York 12538.

[2] "ECF ___" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

[3] The Mortgage was assigned or transferred several times before the assignment to U.S. Bank. (<u>See</u> Loan Documents at 18–36).

2

> If there is a loss or damage to the Property . . . . [t]he amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. <u>If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me</u>.

(Loan Documents at ECF 11) (emphasis added).

After the fire, defendants filed a claim with Great American Insurance Group ("GAIG") under a policy insuring the property, for which Rushmore was the insured party. GAIG inspected the property and determined it would issue a $151,877.02 payment under the policy.

Defendants contend that on April 12, 2019, Rushmore sent plaintiff a letter regarding the insurance claim that attached Rushmore's "Process Guidelines." In support, defendants submit a form letter on Rushmore letterhead addressed to "Borrower" enclosing the Process Guidelines. (Doc. #98-9 (the "Process Guidelines")). Plaintiff contends he did not receive the Process Guidelines sent on this date.

The form letter states it is Rushmore's policy to monitor completion of repairs for losses on properties in which Rushmore has a security interest pursuant to the Process Guidelines, and that Rushmore "reserve[s] the right to withhold funds until all parties have complied with" the Process Guidelines. (Process Guidelines at ECF 3).

The Process Guidelines contemplate different disbursement procedures based on the status of the loan. If the loan is delinquent, "funds will be deposited into a restricted escrow account and disbursed as repairs are completed." (Process Guidelines at ECF 7). A borrower with a delinquent loan can expect an initial disbursement of "1/3 of eligible awarded proceeds

3

issued payable to borrower(s)," but only upon the borrower's submission of certain documents, including a signed contractor bid regarding the repairs and an insurance adjuster's damage estimate; a second disbursement of "1/3 of remaining awarded proceeds" upon "[i]nspection results indicating repairs are 40% - 89% complete"; and a final disbursement of the "[r]emaining awarded proceeds" upon "[i]nspection results indicating [repair work is] 100% complete."  (Id.)

The Process Guidelines provide that "[i]f the insurance claim funds are adequate to pay [the] loan in full," the borrower can "submit a signed written request and authorization to utilize the claim funds towards payoff of the loan."  (Process Guidelines at ECF 7).

Rushmore received the insurance payment check from GAIG on April 22, 2019. Rushmore contends it sent another copy of the Process Guidelines to plaintiff that day, but plaintiff again maintains he did not receive them.

On June 26, 2019, Rushmore disbursed $25,407.50 to plaintiff "represent[ing] the initial release of [plaintiff's] insurance loss funds for property repairs."  (Doc. #98-12 at ECF 2).

On August 6, 2019, defendants inspected the damaged property and concluded that seven percent of repair work had been completed.  Thereafter, on September 18, 2019, Rushmore disbursed $12,030.19 to plaintiff, "represent[ing] the interim release of [plaintiff's] insurance loss funds for property repairs."  (Doc. #98-14 at ECF 2).

Plaintiff commenced this action on September 10, 2019.  (Doc. #1 ("Compl.")).

On October 23, 2019, defendants disbursed $40,000 to plaintiff.  The record does not reflect what triggered this disbursement.

On April 1, 2020, plaintiff sent defendants a "[r]evised estimate for repair and rebuilding [plaintiff's] garage and workshop" indicating $79,907 of the work had been completed and $20,000 of the work remained.  (Doc. #98-17 at ECF 2–3).

4

On April 2, 2020, a non-lawyer representative of plaintiff, Don Rosendale, sent an email to Daniel Santoro, a paralegal for Rushmore's counsel, claiming Rushmore had stated in a prior email it would apply the excess insurance proceeds to the mortgage arrears "so long as in the process [plaintiff] dropped his [f]ederal lawsuit," and that plaintiff "has held off finalizing [this proposed arrangement] until now that so [t]hat (a) He could get the re-construction 80% done so as to coincide with the final agreement-payment and (b) qualify for a loan modification."  (Doc. #110-2 ("Rosendale Ex.") at ECF 4).

On May 27, 2020, defendants disbursed $20,000 to plaintiff "for the completion of the repairs to your home."  (Doc. #98-18 at ECF 3).  The May 27 letter also stated "[plaintiff's] request for the remainder of the insurance funds being held in restricted escrow ($54,439.33) to be applied to the mortgage arrears is currently being processed and [counsel for Rushmore] will reach out to [plaintiff] with further details on this process as they become available."  (Id.)

Plaintiff submits what appear to be portions of email exchanges among Mr. Santoro, plaintiff, and Mr. Rosendale, between May 14 and September 23, 2020, wherein the parties continued to discuss plaintiff's request to apply the remaining insurance funds to plaintiff's unpaid arrears on the loan.  (Rosendale Ex. at ECF 5–6).[4]

On September 23, 2020, Mr. Santoro sent plaintiff and Mr. Rosendale an email stating Rushmore could offer the remaining insurance funds to an "investor as a down payment towards a potential modification.  While a loan modification [w]as previously denied, the availability of this sum as a down payment may help obtain an approval, though there is no guarantee."  (Rosendale Ex. at ECF 7).

---

4   The Court assumes, without deciding, that the email correspondence plaintiff submitted as an exhibit to Mr. Rosendale's affidavit is admissible evidence for purposes of deciding the instant motions. (See Rosendale Ex.).

III.     Foreclosure Action Settlement Conference

On September 25, 2020, the parties attended a settlement conference in the Foreclosure Action.  During the conference, Rushmore and plaintiff again discussed using the remaining insurance proceeds to cover the arrears on plaintiff's loan.

On October 1, 2020, Mr. Santoro emailed plaintiff and Mr. Rosendale stating the investor of a potential loan modification "would like to make a trial modification offer . . . but is requiring an appraisal of the property be completed to determine its value for reference in preparing the offer."  (Rosendale Ex. at ECF 9).

The current status of the loan is not clear from the record.  However, defendants contend "the repair work to the premises has been completed, the insurance proceeds paid for said repair work in full, and . . . the balance of insurance proceeds has been paid toward the amount due on [plaintiff's] mortgage."  (Doc. #111 ¶ 9).

**DISCUSSION**

I.     Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[5]

---

[5]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

6

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 322–23. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004). Bald assertions, completely

unsupported by admissible evidence, are not sufficient to overcome summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

Although courts must afford a pro se litigant special solicitude on a motion for summary judgment and read his submissions "to raise the strongest arguments that they suggest," such solicitude "does not relieve [a] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Recs., 351 F.3d 46, 50 (2d Cir. 2003).

II.     Truth in Lending Act Claim

U.S. Bank argues plaintiff's TILA claim, pursuant to 15 U.S.C. § 1641(g), is time barred. The Court agrees.

A.      Legal Standard

Section 1641(g) provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." 15 U.S.C. § 1641(g)(1) (emphasis added).

"[B]ased on its plain language, Section 1641(g)'s disclosure obligation is triggered only when ownership of the 'mortgage loan' or 'debt' itself is transferred, not when the instrument securing the debt (that is, the mortgage) is transferred." Sage v. HSBC Bank USA Nat'l Ass'n, 2021 WL 1062590, at *7 (N.D.N.Y. Mar. 19, 2021). [6]

A claim under Section 1641(g) must be brought "within one year from the date of the occurrence of the violation," meaning it must be brought within one year and thirty days from the transfer of the mortgage loan. 15 U.S.C. § 1640(e). Equitable tolling of the statute of

---

[6]     Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

8

limitations is available "in rare and exceptional circumstances" when a court finds that "extraordinary circumstances prevented the party from timely performing a required act, and that the party acted with reasonable diligence throughout the period he sought to toll." Grimes v. Fremont Gen. Corp., 785 F. Supp. 2d 269, 286 (S.D.N.Y. 2011).

> Thus, in cases involving TILA, the courts have held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations, because if the very nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified.

Id.

B.  Application

Here, the undisputed record reflects the TILA claim is time barred, and plaintiff fails to identify any evidence suggesting equitable tolling of the limitations period is appropriate.

The Notice of Sale demonstrates Rushmore notified plaintiff on June 11, 2018, that his loan had been transferred on May 14, 2018, to U.S. Bank. Thus, the statute of limitations for plaintiff's claim began to run on June 13, 2018—thirty days after the transfer of plaintiff's mortgage loan—and, absent equitable tolling, expired on June 13, 2019. See Scalercio-Isenberg v. Goldman Sachs Mortg. Co., 2022 WL 3227875, at *14 (S.D.N.Y. Aug. 9, 2022). Plaintiff commenced the instant lawsuit on September 10, 2019, approximately three months after the limitations period expired.

Plaintiff fails to proffer evidence of any fraudulent conduct by U.S. Bank that would support equitable tolling. Plaintiff argues in his motion papers that, during discovery, defendants concealed the date the allonge to the Note was signed. (See Doc. #108 at 19 (plaintiff "submitted an interrogatory to Rushmore's prior counsel . . . asking when the indorsement was signed" but "Rushmore never answered that")). However, any conduct during discovery in this

litigation could not have prevented plaintiff from timely filing the instant lawsuit in the first place.  Moreover, plaintiff does not meaningfully dispute that he received the June 11, 2018, notice, which provides all the information required by Section 1641(g)(1).  (See Doc. #107 ("Pl. 56.1") ¶ 4).  Thus plaintiff "has not come forward with any evidentiary proof to show that [U.S. Bank] fraudulently concealed a material fact" and, "[o]n the contrary, the proof shows that [U.S. Bank] complied with the TILA."  See Zamito v. Patrick Pontiac, Inc., 2008 WL 3930502, at *5 (W.D.N.Y. Aug. 21, 2008).

Accordingly, the TILA claim against U.S. Bank must be dismissed.

III.    Breach of Fiduciary Duty Claim

Rushmore argues it is entitled to judgment as a matter of law on plaintiff's fiduciary duty claim because Rushmore owed no fiduciary duty to plaintiff and, in any event, did not commit any misconduct.

The Court agrees.

A.    Legal Standard

"The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct."  Varveris v. Zacharakos, 110 A.D.3d 1059, 1059 (2d Dep't 2013).  "A fiduciary relationship exists between two persons when one of them is under a duty to act for the benefit of another upon matters within the scope of the relation."  Id.

"Generally, the relationship between a borrower and a bank is contractual in nature and does not create a fiduciary relationship between them."  Baumann v. Hanover Cmty. Bank, 100 A.D.3d 814, 817 (2d Dep't 2012).

10

Under certain circumstances, however, New York law recognizes that a fiduciary relationship may exist in the context of an escrow account.  See Hoover v. HSBC Mortg. Corp. (USA), 9 F. Supp. 3d 223, 253 (N.D.N.Y. 2014) (collecting cases).  For example, "New York case law recognizes a fiduciary duty where specific language in the contract obligates a creditor to make payments out of an escrow account on behalf of the debtor."  Id.  However, "absent specific language in a mortgage establishing a fiduciary obligation, a mortgagee owes no fiduciary duty to a mortgagor with respect to [an] escrow account."  Gorham-DiMaggio v. Countrywide Home Loans, Inc., 592 F. Supp. 2d 283, 294 (N.D.N.Y. 2008), aff'd 421 F. App'x 97 (2d Cir. 2011) (summary order).

      B.      Application

Plaintiff fails to raise a genuine issue of material fact that a fiduciary relationship existed or that Rushmore engaged in any misconduct.

First, Rushmore and plaintiff's relationship is not one giving rise to a fiduciary duty.  As a loan servicer, Rushmore "acts on behalf of [U.S. Bank] to handle the ongoing administration of [plaintiff's] loan, including the collection of mortgage payments."  (Notice of Sale at ECF 2).  Therefore, Rushmore has a duty to act for the benefit of U.S. Bank under the Mortgage and Note, not for the benefit of plaintiff.  See Gorham-DiMaggio v. Countrywide Home Loans, Inc., 592 F. Supp. 2d at 294 (mortgage servicer owed no fiduciary duty to plaintiff mortgagor to manage and service escrow account created under the mortgage).

Second, neither the Mortgage nor the Process Guidelines create a fiduciary relationship between Rushmore and plaintiff.  Rushmore is not a party to the Mortgage, and thus could not have agreed to fiduciary duties through that instrument.  And although the Process Guidelines contemplate depositing funds into an escrow account, the escrow account exists to protect U.S.

11

Bank's and Rushmore's interests, not those of plaintiff. (See Process Guidelines at ECF 2); see also Avila v. CitiMortgage, Inc., 801 F.3d 777, 784 (7th Cir. 2015) ("[I]t's not consistent with a typical escrow arrangement [that creates a fiduciary duty] to give an escrow agent authority to make self-interested and discretionary decisions about when and where to disburse the escrowed funds.").

Finally, even if plaintiff were able to establish Rushmore owed plaintiff a fiduciary duty, plaintiff has not proffered any evidence that Rushmore committed any misconduct. To the contrary, the undisputed record reflects Rushmore disbursed the insurance proceeds to plaintiff in increments as the repair work was completed, eventually disbursing sufficient funds to cover the full cost of plaintiff's repairs. Moreover, until Rushmore and plaintiff began negotiating a loan modification, Rushmore agreed to apply the remaining proceeds to pay down the loan arrears. Emigrant Funding Corp. v. Kensington Realty Grp. Corp., 178 A.D.3d 1020, 1023 (2d Dep't 2019) (under New York law mortgagee was "entitled to retain the insurance proceeds and disburse them as work on the restoration of the . . . property was completed"). Therefore, far from giving rise to any inference of bad faith or fraudulent conduct, the record reflects Rushmore acted consistently with the terms of the Mortgage and the Process Guidelines.

Accordingly, the breach of fiduciary duty claim must be dismissed.

IV.     Breach of Contract Claim

Rushmore argues the breach of contract claim must be dismissed because plaintiff fails to raise a genuine issue of fact that Rushmore breached any agreement it had with plaintiff.

The Court agrees.

A.     Legal Standard

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).

A court may grant summary judgment on a contract claim when the contractual language is "plain and unambiguous." Zurich Am. Ins. Co. v. ABM Indus., Inc., 397 F.3d 158, 164 (2d Cir. 2005). "Contract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989) (alteration in original) (quoting Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351, 355 (1978)).

B.     Application

Here, plaintiff fails to raise a genuine issue of material fact that Rushmore breached any contract with plaintiff.

Plaintiff contends Rushmore breached the Process Guidelines by initially disbursing only $25,407—instead of approximately $50,000, which represents one-third of the full amount of the $151,877.02 insurance proceeds—to plaintiff to begin repairs, and disbursing the remaining proceeds too slowly. However, it is difficult to see how the Process Guidelines could comprise a contract between plaintiff and Rushmore when plaintiff disputes receiving the Process Guidelines and disputes that they apply to his loan. (Pl. 56.1 ¶¶ 9, 10, 12); see also Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004) ("Under New York law, mutual assent is essential to the formation of a contract and a party cannot be held to have

contracted if there was no assent or acceptance.").[7]  Moreover, the Process Guidelines state they are Rushmore's "policy with regard to the monitoring of hazard insurance claim's [sic] proceeds" and are intended to "assist [borrowers] in understanding the processing expectations," thus unambiguously indicating they are not a contract, but instead reflect Rushmore's internal policy.  (Process Guidelines at ECF 2).

Nonetheless, even if the Process Guidelines formed a contract between plaintiff and Rushmore, the record does not contain any evidence of a material breach.  To the contrary, the "funds [were] disbursed in increments and [were] released based on inspection results," in accordance with the Process Guidelines.  (Process Guidelines at ECF 6).  Moreover, although the Process Guidelines provide that a borrower can "expect" an initial distribution of one-third of eligible awarded proceeds, the Process Guidelines also qualify that disbursements with respect to delinquent loans, like plaintiff's loan, may require "additional approval[s]" and "additional processing time."[8]  (Id.)  Therefore, the Process Guidelines do not reflect an unambiguous commitment to distribute one-third of the full insurance proceeds immediately to plaintiff, as plaintiff contends.

---

[7]  Plaintiff argues in his motion papers that Rushmore acted contrary to the Fannie Mae Servicing Guidelines, which plaintiff contends apply to his loan in lieu of the Process Guidelines. But even if the Court were to assume plaintiff's loan was governed by the Fannie Mae Servicing Guidelines, plaintiff has not shown how those guidelines formed a contract between plaintiff and Rushmore.  Therefore, plaintiff's arguments regarding the Fannie Mae Servicing Guidelines are without merit.

[8]  Plaintiff argues his loan should have been treated as "current" beginning in April 2019, but his position is undermined by the purported email exchanges with Mr. Santoro he submitted, in which the parties discussed whether the proceeds would be applied to his delinquent loan at least through October 1, 2020.  (Rosendale Ex. at ECF 9).

Finally, plaintiff argues the parties reached an agreement during their settlement discussions in the Foreclosure Action under which defendants would apply the remaining insurance proceeds of his loan as a down payment for a loan modification. However, even if the Court could consider this theory,[9] it is belied by the email correspondence submitted by plaintiff, which reflects the parties did not reach a final agreement. (Rosendale Ex. at ECF 9).

Accordingly, the breach of contract claim must be dismissed.

V.    Equitable Relief

Rushmore argues plaintiff fails to set forth a sufficient evidentiary basis for equitable relief.

The Court agrees.

Plaintiff seeks equitable relief in the form of "an Order from the court for [Rushmore] to forthwith pay" plaintiff the remaining insurance proceeds. (Compl. ¶ 49). However, plaintiff has been paid for the full cost of his repairs, and because his loan was delinquent, U.S. Bank was entitled to apply the remaining proceeds towards the loan arrears under Section 5 of the Mortgage. Therefore, there are no remaining proceeds to which plaintiff is entitled and has not been paid, and plaintiff's request is moot. Uzuegbunam v. Preczewski, 141 S. Ct. 792, 796 (2021) (claim becomes moot "if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief").

Accordingly, the request for equitable relief must be dismissed.

---

[9]    Even read most liberally, the complaint cannot be construed to raise this cause of action.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED.

Plaintiff's motion for summary judgment is DENIED.

The Clerk is instructed to terminate the motions (Docs. ##98, 99, 100, 104) and close this case.

Chambers will mail a copy of this Opinion and Order to plaintiff at the address on the docket.

Dated: September 6, 2022
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge